IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                                                                    Case No. 17-CR-1836-MV

SUSAN K HARRIS,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendant Susan K. Harris's Opposed Motion for Compassionate Release. Doc. 380. Mrs. Harris, who is currently housed at FCI Aliceville, seeks a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). *Id*. In addition, she filed a Motion for Status Report or Hearing. Doc. 387. The government opposes the motion for compassionate relaese. Doc. 400. Having carefully considered the briefing, relevant law, and being otherwise fully informed, the Court finds that Mrs. Harris's Motion for Compassionate Release is not well-taken and will be **DENIED**. As the Court finds that a hearing is not necessary to reach a ruling on this Motion, Mrs. Harris's Motion for Status Report or Hearing (Doc. 397) is likewise **DENIED**.

**BACKGROUND**

For over a decade, Mrs. Harris and her co-conspirators schemed to embezzle millions of dollars from the client trust accounts of sick and elderly victims managed by her non-profit company, Ayudando Guardians ("Ayudando"). Doc. 287 at 7. The non-profit organization was established to provide guardianship, conservatorship, and financial management services for hundreds of individuals with special needs. *Id.* Mrs. Harris was the co-founder, president, and chief executive officer of Ayudando, and her husband and son were employees of the organization. *Id.*

1

Through this company, Mrs. Harris and her co-conspirators stole more than 11 million dollars from elderly, disabled, and special needs clients. *Id.*

Specifically, Mrs. Harris comingled client trust accounts with Ayudando company accounts, maintained an American Express account and paid the balance with client funds, and wrote checks from Ayudando to herself, to cash, and to cover personal expenses. *Id.* at 7–8. In addition, Mrs. Harris submitted false and fraudulent statements of account and certifications of deposit to the Department of Veterans Affairs, forged bank statements, and submitted forged and fraudulent bank statements to the Department of Veterans Affairs. *Id.* at 8.

Mrs. Harris spent Ayudando's clients' funds to fuel a lavish lifestyle for herself and her family. She used the stolen money to purchase several expensive cruises, vacations, RV trips, and luxury vehicles. Doc. 365 at 134–37. She purchased a home in an exclusive gated community. *Id.* at 134. From March 2013 through July 2017, Mrs. Harris and her co-conspirators spent hundreds of thousands of dollars in stolen funds to lease a private luxury box at the UNM basketball arena. *Id.* at 136. They became the arena's second largest client and the single largest food buyer during this period, all through spending money stolen from vulnerable victims. *Id.* In 2014, Mrs. Harris and a co-conspirator gave $100,000 in stolen client funds to a software developer working to develop a fantasy football program. *Id.* These are just a few examples of the extravagant lifestyle that Mrs. Harris built on the backs of Ayudando's vulnerable clients. The total loss from Mrs. Harris and her co-conspirators' fraudulent conduct is estimated to be $11,751,428.06. *Id.* at 142.

Mrs. Harris was arrested on July 19, 2017. Doc. 287 at 2. On July 11, 2019, she pled guilty to one count of conspiracy, ten counts of mail fraud, one count of aggravated identity theft, nine counts of money laundering, and one count of conspiracy to commit money laundering. Doc. 127 at 2. Her co-conspirators—Sharon Moore, William Harris, and Craig Young—were also arrested

and charged for their roles in the conspiracy. Even after pleading guilty to the offenses with which she was charged, Mrs. Harris continued to attempt to escape responsibility for her actions and the disastrous consequences that they had in the lives of her victims. She failed to appear in court for her sentencing on March 2 and 3, 2020. Doc. 287 at 39. Instead, she and her husband fled New Mexico and were apprehended by the United States Marshals Service on April 15, 2020, in Shawnee, Oklahoma. *Id.* The two had assumed new identities and purchased false Utah State identification cards bearing the names Cheryl and Marvin Valdez. *Id.* at 26.

In addition to other sentencing enhancements, Mrs. Harris's guidelines included adjustments based on the facts that her offenses involved vulnerable victims, that she abused a position of public or private trust, that she acted as a manager or supervisor of extensive criminal activity, and that she willfully obstructed justice. Doc. 287 at 5. Due to absconding, Mrs. Harris did not qualify for an adjustment based on acceptance of responsibility. *Id.* The Court considered her health, in addition to all available information regarding her history and characteristics, when determining her sentence. Doc. 365 at 151. Mrs. Harris was finally sentenced on July 15, 2021 to a total term of imprisonment of 47 years. Doc. 344.

Mrs. Harris ultimately received a higher sentence than her co-defendants. Sharon Moore, the co-founder of Ayudando, was sentenced to a total term of 240 months. Doc. 253. Notably, Mrs. Moore's guidelines incorporated both a reduction due to her acceptance of responsibility and an enhancement due to her acting as a manager of extensive criminal activity. Docs. 204, 207. William Harris, an employee of Ayudando and Mrs. Harris's husband, was sentenced to a total term of 180 months. Doc. 340. Due to absconding with Mrs. Harris prior to sentencing, Mr. Harris received an enhancement for obstruction of justice and did not receive a reduction for acceptance of responsibility. Doc. 294-1 at 26-27. Craig Young, an employee of Ayudando and Mrs. Harris's

son, who neither absconded nor acted as a manager, was sentenced to a term of 71 months. Doc. 302. The fact that Mrs. Harris's sentence is higher than her co-defendants' sentences is based, in part, on the combination of her role as a manager and the fact that she attempted to escape responsibility after pleading guilty. None of her co-defendants are similarly situated.

Subsequently, on June 13, 2022, Mrs. Harris filed her instant motion for compassionate release in which she asks for the Court to reduce her sentence, citing her age, her diagnosis with coronary artery disease, and other health conditions. Doc. 380 at 17. She argues that these conditions are recognized by the CDC as increasing her risk of serious illness or death if she were to contract COVID-19 again. *Id.* at 16. The government opposes her request. Doc. 400. As of the filing of this order, Mrs. Susan Harris has been in custody for a total of 50 months and 13 days. According to the Bureau of Prisons ("BOP"), her projected release date, without the relief requested, is April 24, 2059. *Inmate Locator*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited May 7, 2024).

**LEGAL STANDARD**

"Federal courts are generally forbidden from modifying a term of imprisonment after it has been imposed." *United States v. Thompson*, No. CR 12-3013 JB/CG, 2024 WL 1557126, at *9 (D.N.M. April 10, 2024) (citing *Freeman v. United States*, 564 U.S. 522, 526 (2011)). However, under 18 U.S.C. § 3582(c)(1)(A), federal courts are permitted to reduce a defendant's term of imprisonment provided certain conditions are met. *Id.* As a threshold matter, § 3582(c)(1)(A) "requires exhaustion before a court may consider a motion for compassionate release." *United States v. Hemmelgarn*, 15 F.4th 1027, 1030 (10th Cir. 2021). The exhaustion requirement is satisfied where "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "the lapse of 30 days

4

from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). However, the exhaustion requirement is "a claim-processing rule" that is not "jurisdictional in nature" and thus must be raised by the government or it is waived. *Id.* at 1030–31.

The Tenth Circuit has put forth a three-step test for district courts to apply when ruling on motions filed under § 3582(c)(1)(A). *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). Before reducing a term of imprisonment under the compassionate release provision, a court must find that (1) "extraordinary and compelling reasons" warrant a sentence reduction, (2) such a reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support such a reduction. *Thompson*, 2024 WL 1557126, at *9 (citing *McGee*, 992 F.3d at 1042; 18 U.S.C. § 3582(c)(1)(A)(i)). The Court may deny a § 3582(c)(1(A) motion "when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking" and need not address the others. *McGee*, 992 F.3d at 1043 (quoting *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)).

A. **Extraordinary and Compelling Reasons**

Section 3582(c)(1)(A)(i) requires a district court to find that "extraordinary and compelling reasons warrant a sentence reduction" before it may grant such a reduction. The Court has "the authority to determine for [itself] what constitutes extraordinary and compelling reasons." *United States v. Hald*, 8 F.4th 932, 938 n.4 (10th Cir. 2022). However, as addressed below, that authority "is bounded by the requirement under step two of the statutory test that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021). "The Court has 'deriv[ed] its test for extraordinary

5

and compelling circumstances from the words' dictionary definitions.'" *Thompson*, 2024 WL 1557126, at *10 (quoting *United States v. Gonzales*, 547 F. Supp. 3d 1083, 1124-25 (D.N.M. 2021), *aff'd*, No. 21-2060, 2021 WL 5985347 (10th Cir. December 17, 2021). Black's Law Dictionary defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common," *Extraordinary*, BLACK'S LAW DICTIONARY (11th ed. 2019), and the New Oxford American Dictionary defines "compelling" as "evoking interest, attention, or admiration in a powerfully irresistible way; not able to be refuted, inspiring conviction; not able to be resisted, overwhelming," *Compelling*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010). See *Thompson*, 2024 WL 1557126, at *10.

Under certain circumstances, a defendant's medical condition can constitute an extraordinary and compelling reason for compassionate release. *United States v. Lopez*, 487 F. Supp. 3d 1156, 1158 (D.N.M. 2020) (finding, in May 2020, that a defendant's "age and underlying health conditions, which put him at a significantly increased risk of serious illness or even death from COVID-19, constitute[d] 'extraordinary and compelling reasons' warranting his compassionate release . . . when combined with what appear[ed] to be an emerging outbreak of the virus at the facility in which he [was] incarcerated"). The defendant in *Lopez* suffered from high blood pressure and type II diabetes, which he noted corresponded with elevated rates of infection and death from COVID-19, and he had already undergone amputation of part of his left leg. *Id.* at 1160. There was also evidence before the Court of "an emerging outbreak of the [COVID-19] virus at the facility" where Mr. Lopez was incarcerated. *Id.* Notably, in May 2020 there was not yet a vaccine available to guard against COVID-19 infection, nor had effective treatments been developed to mitigate symptoms for those who contracted the virus. *See CDC*

*Museum COVID-19 Timeline*, DAVID J. SENCER CDC MUSEUM, https://www.cdc.gov/museum/timeline/covid19.html# (last visited June 13, 2024).

However, "cases in which COVID-19 is a factor for compassionate release require more than speculative complications." *United States v. Baca*, No. CR 16-1613 JB, 2020 WL 5369078, at *15 (D.N.M. Sept. 8, 2020). Underlying health conditions may not present extraordinary and compelling circumstances where "the record indicates that the BOP manages effectively [the defendant's] chronic conditions." *United States v. Eccleston*, 543 F. Supp. 3d 1092, 1140 (D.N.M. 2021). Additionally, when a defendant has already contracted COVID-19 and has access to the vaccine, these factors weigh against finding that extraordinary and compelling reasons exist to reduce her existing sentence. *Id.*

The Tenth Circuit has not issued binding guidance on how an individual's vaccination status impacts her compassionate release request. However, in a recent unpublished opinion, the court of appeals reasoned as follows:

> Given the effectiveness of COVID-19 vaccines, we agree with the Sixth and Seventh Circuits that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an extraordinary and compelling reason warranting a sentence reduction. We also agree that a prisoner who is unable to receive or benefit from a vaccine may still be able to show extraordinary and compelling reasons warranting a sentence reduction.

*United States v. McRae*, No. 21-4092, 2022 WL 803978, at *2 (10th Cir. Mar. 17, 2022) (unpublished) (cleaned up). Indeed, vaccination *does* generally reduce one's risk of severe illness or death from COVID-19 infection. *See COVID-19 Vaccines Work*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Aug. 17, 2022). However, when a movant shows individualized medical evidence of extraordinary and compelling vulnerability to COVID-19 despite vaccination, or when a movant

demonstrates extraordinary and compelling factors beyond medical vulnerability, it may be proper to grant a request for compassionate release.

### B. Sentencing Commission Policy Statement

On November 1, 2023, a new Sentencing Commission policy statement became effective that is "plainly applicable to motions for sentence reduction filed by either the Director of the Bureau of Prisons or a defendant." *United States v. Bradley*, 97 F.4th 1214, 1217 n.1 (10th Cir. 2024). The policy statement lists grounds that constitute extraordinary and compelling circumstances and provides additional guidance for courts. These listed grounds are (1) medical circumstances, (2) age, (3) family circumstances, (4) whether the defendant was a victim of abuse by or at the direction of an individual who had custody or control of him or her, (5) "other reasons" similar in gravity to those previously listed, and (6) whether the defendant has already served at least ten years of an "unusually long sentence" which would have been significantly shorter given subsequent changes in the law. U.S.S.G. § 1B1.13(b)(1)-(6).

The new policy statement identifies medical circumstances that, alone or in combination, may present extraordinary and compelling reasons for sentence modification. These include "terminal illness," physical or mental decline that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," "a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," and "increased risk of suffering severe medical complications or death as a result of exposure to [an] ongoing outbreak of infectious disease [in the defendant's facility] or [an] ongoing public health emergency." U.S.S.G. § 1B1.13(b)(1). The age of the defendant may also constitute an extraordinary and compelling reason if the defendant is at least

8

65, is experiencing a serious deterioration in physical or mental health due to aging, and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13(b)(2).

### C. Sentencing Factors Under 18 U.S.C. § 3553(a)

Finally, if the Court determines that compassionate release is justified under the standards explored above, it "must consider whether a reduction aligns with the applicable 18 U.S.C. § 3553(a) factors." *Thompson*, 2024 WL 1557126, at *9 (citing *McGee*, 992 F.3d at 1042). These factors direct sentencing courts to consider the nature and circumstances of the offense and the history and characteristics of the defendant in imposing a sentence that is "sufficient, but not greater than necessary" to comply with need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

## DISCUSSION

As set forth herein, the Court finds that Mrs. Harris has satisfied the administrative exhaustion requirement, but has failed to meet any of the prerequisites necessary to entitle her to compassionate release. Specifically, she has failed to show extraordinary and compelling reasons justifying a reduced sentence under either the ordinary meaning of the statute or the Sentencing Commission's accompanying policy statement. Accordingly, the Court is not required to consider the § 3553(a) factors. *See McGee*, 992 F.3d at 1043 ("[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others."). Still, the Court notes that the § 3553(a) factors also militate against

9

granting Mrs. Harris's motion, as addressed below.

### I. Mrs. Harris Has Satisfied the Administrative Exhaustion Requirement.

An individual may move to modify a term of imprisonment with a district court only after she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [her] behalf *or* the lapse of 30 days from the receipt of such a request by the warden of [her] facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A) (emphasis added). On March 7, 2022, Mrs. Harris petitioned the BOP for compassionate release. Doc. 380. On June 13, 2022, not having received a response from the warden of FCI Aliceville, she filed the instant motion with the Court. *Id.* The government does not dispute this series of events. Doc. 400. Because this motion was filed more than 30 days after her petition to the BOP, the Court finds that Mrs. Harris has satisfied § 3582(c)(1)(A)'s exhaustion requirement. Doc. 380. *See also United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. July 15, 2020) (unpublished) (stating that the exhaustion requirement is satisfied if an individual has requested that the BOP move for compassionate release on their behalf and "thirty days have passed since the 'warden of the [individual]'s facility' received a compassionate-release request from [them]"). The Court thus may proceed to decide Mrs. Harris's motion for compassionate release on its merits.

### II. The Reasons Cited in Support of a Reduction of Mrs. Harris's Sentence Are Not Extraordinary and Compelling.

District courts exercise broad discretion in determining what constitutes extraordinary and compelling reasons for compassionate release. *United States v. Ford*, No. 23-3038, 2023 WL 3829725, at *1 (10th Cir. June 6, 2023) (Tymkovich, C.J., concurring) (citing *Maumau*, 993 F.3d at 838). Mrs. Harris argues that her age and health conditions, together with the possibility of contracting COVID-19 while in custody, justify her compassionate release. Doc. 380. The

government disagrees. Doc. 400. The Court finds Mrs. Harris's arguments unavailing for the reasons set forth below.

In support of her motion for compassionate release, Mrs. Harris provided information on her medical conditions. She has been diagnosed with coronary artery disease and previously suffered from a myocardial infarction, or heart attack. Doc. 380 at 17. In addition, she suffers from hypertension, hypothyroidism, osteo arthritis, glaucoma, macular degeneration, shortness of breath, short-term memory loss, depression, post-traumatic stress disorder, fall risk due to poor balance, and hearing loss. *Id.* She underwent cataract surgery in December 2019 and had stints placed in both her eyes due to elevated blood pressure. *Id.* Several medical tests, including an "echocardiogram, lab work, bone density and mamo gram [sic]" had been ordered for Mrs. Harris but had not yet been completed at the time she filed her motion. *Id.* She notes that she sometimes "need[s] assistance with normal daily living" and argues that her chronic medical conditions have been identified by the CDC as elevating her risk of serious illness or death if she is re-infected with COVID-19. *Id.* at 12, 17.

In sentencing Mrs. Harris, the Court took into account Mrs. Harris's age and many of the health conditions identified in her motion. Specifically, the Court noted that "she was diagnosed in 2012 with coronary artery disease [and that she] suffers from hypertension, glaucoma, and early stages of macular degeneration, and hyperlipidemia." Doc. 365 at 151. The information that Mrs. Harris has submitted in support of her motion for compassionate release adds osteo arthritis, shortness of breath, short-term memory loss, depression, post-traumatic stress disorder, fall risk, and hearing loss to this list. Doc. 380. These conditions, however, appear to be the natural results of Mrs. Harris's aging and incarceration, and do not present an increased risk of serious illness from COVID-19. *See People with Certain Medical Conditions*, COVID-19,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 13, 2024). While heart disease does present a risk in combination with COVID-19, Mrs. Harris's condition was taken into consideration at her original sentencing and is being managed by medication while she is in custody. Doc. 365 at 151; Doc. 380. Mrs. Harris already contracted COVID in May 2020 and recovered without any apparent lasting effects, which weighs against finding that the potential for future infection presents an extraordinary or compelling reason for release. *See United States v. Hald*, 8 F.4th 932, 939 n.5 (10th Cir. 2021); Doc. 400 at 6.

Indeed, both vaccination against and prior infection and recovery from COVID-19 significantly diminish the health risks of contracting COVID-19, and thus weigh heavily against finding that the risk of contracting the disease justifies a sentence reduction "for the vast majority of prisoners." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *See also Hald*, 8 F.4th at 939 n.5 ("[L]ike access to vaccination, prior infection and recovery from COVID-19 would presumably weigh against a finding of extraordinary and compelling reasons."); *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("[W]ith access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."). Here, Mrs. Harris has been infected with and recovered from COVID-19, and has not argued or demonstrated that she has been denied access to the vaccine. Nor has Mrs. Harris presented evidence of any "confirmed active cases [of COVID-19] among inmates" at FCI Aliceville. *Hemmelgarn*, 15 F.4th at 1031. Under these circumstances, there is no basis to conclude that Mrs. Harris faces a greater risk from COVID-19 while incarcerated than she would face if she were released.

Further, while in custody, Mrs. Harris is receiving medication to address her health issues. According to her own motion, she is currently receiving carvedilol for heart disease, lisinopril for

hypertension, pravastatin for cholesterol, levothyroxin for hypothyroidism, aspirin to prevent stroke, ibuprofen for arthritis, furosemide for fluid retention, and potassium chloride. Doc. 380 at 17. Thus "[t]he evidence before the court shows [Mrs. Harris] is receiving treatment for [her] medical issues." *United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021).

Mrs. Harris's medical situation does not fall "[b]eyond what is usual, customary, regular, or common" for defendants of her age, and thus is not "extraordinary." *Extraordinary*, BLACK'S LAW DICTIONARY (11th ed. 2019). "Coronary artery disease is common," particularly among older individuals. *Coronary Artery Disease*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/coronary-artery-disease/symptoms-causes/syc-20350613 (last visited June 12, 2024). Nor are the reasons that Mrs. Harris cites in support of her request for compassionate release "compelling" in the sense that they are "not able to be resisted, overwhelming." *Compelling*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010). This is particularly true in light of the Tenth Circuit's rulings that access to the COVID-19 vaccine mitigates risks of infection while incarcerated. *See Hald*, 8 F.4th at 939 n.5; *United States v. Duran*, No. 21-4104, 2022 WL 4391880, at *2 (10th Cir. Sept. 23, 2022) (unpublished); *United States v. Gunkel*, No. 22-5055, 2022 WL 17543489, at *2 (10th Cir. Dec. 8, 2022) (unpublished). Therefore, after considering the evidence that she has submitted, the Court finds that Mrs. Harris's age and health do not amount to a compelling and extraordinary reason to modify her original sentence under § 3582(c), either separately or in conjunction.

### III.   Reducing Mrs. Harris's Sentence At This Point Would Not Be Consistent with the Sentencing Commission's Policy Statement.

In determining whether a sentence reduction is appropriate, the Court must also consider the United States Sentencing Guideline Manual policy statements. *See McGee*, 992 F.3d at 1042. Mrs. Harris has not made the requisite showing of either "terminal illness," decline that

substantially diminishes her ability "to provide self-care within [custody] and from which [she] is not expected to recover," a medical condition that "requires long-term specialized medical care that is not being provided" that puts her at risk of "serious deterioration in health or death," or exposure to an "ongoing outbreak of infectious disease" or an "ongoing public health emergency." U.S.S.G. § 1B1.13(b)(1). While she asserts that she sometimes needs assistance with daily living, this plain statement does not, on its own, meet the burden of demonstrating the kind of need contemplated by the policy statement. Simply put, Mrs. Harris's health concerns are typical for a defendant of her age and are not equivalent to "a serious and advanced illness with an end-of-life trajectory," nor has she made a showing that they prevent her from caring for herself. U.S.S.G. § 1B1.13(b)(1). Indeed, she has not demonstrated that release or a reduction of her sentence would in any way mitigate the current risks to her health. Mrs. Harris's health condition thus does not rise to the level of severity contemplated by the Sentencing Commission's policy statement.

Mrs. Harris is likewise not eligible for a sentence reduction due to her age under § 1B1.13(b)(2) because such a reduction is reserved for defendants who have served "at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Thus far, Mrs. Harris has served just over four years of imprisonment, which is just over 10 percent of the sentence originally imposed by the Court. Additionally, she has not made a showing of exceptional family circumstances, abuse at the hands of custodial officers, other similarly serious factors, or a change in law that would support her motion for a sentence reduction. *See generally* Doc. 380. Therefore, after considering the evidence that Mrs. Harris has submitted, the Court finds that reducing her sentence would not be consistent with the policy statement issued by the Sentencing Commission.

**IV.     The § 3553(a) Factors Weigh Against Mrs. Harris's Release.**

Because it has found that no extraordinary and compelling factors warrant a sentence reduction, the Court need not consider the 3553(a) factors. Nonetheless, the Court notes that these factors would not support Mrs. Harris's release. 18 U.S.C. §§ 3582(c)(1)(A)(ii); § 3553(a). These factors include: the nature and circumstances of the offense; the history and characteristics of the defendant; the risk of danger to the community; and the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment. 18 U.S.C. § 3553(a).

Due to her advanced age and the non-violent nature of her offenses, Mrs. Harris most likely does not present a danger to the community or a risk to public safety moving forward. However, the other § 3553(a) factors militate strongly against granting her request for a reduced sentence. Regarding the nature and circumstances of the offense, Mrs. Harris's acts were particularly serious. Her crimes were not committed out of desperation or deprivation, but out of greed. As described above, she enriched herself and her family at the expense of vulnerable clients. Regarding her history and characteristics, Mrs. Harris had a safe and comfortable childhood, never experienced any abuse, and had all her basic needs met growing up. Doc. 365 at 150. There is nothing in her background that mitigates the harm that she has done to the community. Regarding the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment, Mrs. Harris was sentenced to 47 years in custody. Thus far, she has served just over four years of this sentence. Granting a reduction of the magnitude that she requests at this early stage would severely undermine the deterrent effect of the Court-imposed sentence and would greatly underrepresent the seriousness of her offense.

## CONCLUSION

For the reasons stated above, Mrs. Harris's Motion for Compassionate Release, Doc. 380, and Motion for Status Report or Hearing, Doc. 397, are hereby **DENIED**.

ENTERED this 27th day of June 2024.

_____
THE HONORABLE MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE